IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

KIMBERLY S.[1],

    Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

    Defendant.

No. 3:17-cv-01956-HZ

OPINION & ORDER

James Coon
Scott A. Snell
THOMAS, COON, NEWTON & FROST
The Thomas Mann Building
820 SW 2nd Avenue, Suite 200
Portland, Oregon 97204

    Attorney for Plaintiff

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

OPINION & ORDER – 1

Renata Gowie
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Thomas M. Elsberry
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant

HERNANDEZ, District Judge:

Plaintiff Kimberly S. brings this action for judicial review of the Commissioner's final decision denying her application for Social Security Disability (SSDI) under Title II of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g). I reverse the Commissioner's decision and remand for additional proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for SSDI on October 1, 2013, alleging an onset date of March 31, 2012. Tr. 186–87. Her application was denied initially and on reconsideration. Tr. 90–105; Tr. 126–30 (Initial); Tr. 106–23, 132–34 (Recon.). On May 10, 2016, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ) who found that Plaintiff was not disabled. Tr. 14–39; Tr. 40–89. The Appeals Council denied review. Tr. 1–6.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on having bipolar II disorder with psychosis. Tr. 423; Tr. 427. She was fifty-three years old at the time of the alleged onset date. Tr. 31. She has a high school education and past work experience as an administrator and secretary. Tr. 31; Tr. 52; Tr. 55.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which…has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated under a five-step procedure. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id*.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. 137 at 140-41; 20 C.R.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other

work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets the burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since March 31, 2012, the alleged onset date. Tr. 19. At step two, the ALJ determined that Plaintiff has the severe impairment of bipolar II disorder with psychosis. *Id*. However, at step three, the ALJ found that Plaintiff's impairments did not meet or equal, singly or in combination, a listed impairment. Tr. 20. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform a full range of work at all exertion levels as defined in 20 C.F.R. § 404.1529 and SSR 96-4p, with the following limitations:

> [Claimant] is able to perform simple routine tasks defined as no greater than reasoning level 2. She is able to tolerate few changes in a routine work setting, defined as a predictable work routine with simple work-related decisions. The claimant is able to perform work that does not require public contact. She is able to have occasional superficial contact with coworkers and supervisors. The claimant is able to perform work tasks that do not involve teamwork.

Tr. 22. The ALJ concluded that Plaintiff is unable to perform past relevant work. Tr. 30. However, at step five, the ALJ found that there are jobs in the national economy that Plaintiff can perform, such as industrial cleaner, laundry worker, and hand packager. Tr. 31. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 32.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applies proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir.

OPINION & ORDER – 4

2004). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

The Court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Amin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193. However, the court cannot rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F. 3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

DISCUSSION

Plaintiff argues that the ALJ erred in rejecting the opinions of treating psychologist Kushanthi Samaratunge, Psy. D., and treating Psychiatric Mental Health Nurse Practitioner Nancy Pitney. Specifically, the ALJ rejected these practitioners' opinions that Plaintiff has an extreme or a marked limitation in completing a normal workday and workweek.

**I. Treating Psychologist Dr. Samaratunge**

Social Security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Holohan v. Massanari*, 246 F.3d 1195, 1202–02 (9th Cir. 2001); *Lester v. Charter*, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to treating physicians' opinions than to the opinions of physicians who do not actually treat the claimant. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). If the treating physician's medical opinion is supported by

medically acceptable diagnostic techniques and is consistent with the other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Ghamin v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If the treating physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghamin*, 763 F.3d at 1160–61. Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject that opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the records. *Id*. at 1161; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Specific and legitimate reasons for rejecting a physician's opinion include finding that the opinion is "brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *see also Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may "permissibly reject … check-off reports that [do] not contain any explanation of the bases of their conclusions").

Dr. Samaratunge began treating Plaintiff in March of 2014. Tr. 647. She noted in her Diagnostic Evaluation that Plaintiff's symptoms included

> feeling depressed and sad most days, incontrollable crying, feeling worthless and not needed by anyone, wishing she could die, loss of appetite, delusions that include feeling that she is being sued and her romantic feelings are reciprocated, a lack of motivation to engage in activities that used to be pleasurable and difficulties with sleep.

Tr. 537. Dr. Samaratunge diagnosed Plaintiff with "Bipolar II Disorder and a recent Major Depressive Episode with Psychotic Features." *Id*. She noted that Plaintiff was not working due to "difficulty managing paranoid suspicions." Tr. 542.

On April 3, 2015 and March 8, 2016, Dr. Samaratunge completed mental capacity assessments of Plaintiff. In these assessments she opined that Plaintiff had moderate limitations

in understanding and memory and adaption; moderate and marked limitations in social interaction; and marked and extreme limitations in sustained concentration and persistence. Tr. 646; Tr. 841. In both assessments, she listed an "extreme" limitation in Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. Tr. 645. Dr. Samaratunge wrote in her April 3, 2015 medical/clinical findings that "[Plaintiff] has a history of experiencing both depressive and manic episodes with psychosis. These episodes have often interfered with her work and caused emotional distress as well as impaired her daily functioning." Tr. 646. Likewise, on March 8, 2016, Dr. Samaratunge noted that Plaintiff "has a history and ongoing symptoms of depressive and manic episodes due to psychosis. These episodes have often interfered with and continue to interfere with her work as well as daily functioning." Tr. 841.

The ALJ assigned "little weight" to Dr. Samaratunge's opinion that Plaintiff has an extreme limitation in being able to complete a normal workday and workweek. Tr. 29. The ALJ found that the record did not support Dr. Samaratunge's opinion in this area. Specifically, the ALJ noted that the medical evidence showed that Plaintiff's symptoms are "generally stable with medications." *Id*.

Plaintiff argues that the ALJ rejected Dr. Samaratunge's opinion that Plaintiff has an extreme limitation in her ability to complete a normal workday and workweek without providing specific and legitimate reasons supported by substantial evidence. Pl.'s Op. Brief 1. Plaintiff argues that the ALJ erred in rejecting Dr. Samaratunge's opinion on the basis that Plaintiff's symptoms are "stable." Plaintiff asserts that the ALJ's reason is illegitimate because it fails to address the substance of Dr. Samaratunge's opinion. *Id.* at 7. Plaintiff asserts that "stability says nothing about severity" and "has no probative value in assessing the veracity of [Dr.

OPINION & ORDER – 7

Samaratunge's] opinion about [Plaintiff's] functional limitations." *Id*. Plaintiff contends that even with the help of medication, she experiences daily auditory hallucinations and paranoid ideation. *Id*. at 2–3. Plaintiff notes that Dr. Samartunge's April 3, 2015 and March 8, 2016 opinions rely on Plaintiff's symptoms of manic episodes with psychosis as interfering with her work and daily functioning. Tr. 539.

I agree with Plaintiff that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Samarantunge's opinion. The ALJ rejected Dr. Samarantunge's opinion because it was not supported by the record. But, the ALJ then explained that "specifically, the medical evidence shows that [Plaintiff's] symptoms are generally stable with medication." *Id*. While this may be a specific reason, I agree with Plaintiff that it is not legitimate. The ALJ's statement is unrelated to Dr. Samaratunge's opinion that Plaintiff's bipolar disorder with psychosis prevents her from being able to perform a normal workday and workweek without extreme limitation. Regardless of whether Plaintiff's symptoms are stable with medication, the record consistently demonstrates that Dr. Samaratunge noted in her assessments that Plaintiff continued to experience daily auditory hallucinations and paranoid ideation which continued to interfere with her ability to work. In particular, in her April 3, 2015 opinion, Dr. Samaratunge opined that Plaintiff's "manic episodes with psychosis…have often interfered with her work and caused emotional distress as well as impaired her daily functioning." Tr. 646. Likewise, on March 8, 2016, Dr. Samaratunge noted that Plaintiff's manic episodes due to psychosis "have often interfered with and continue to interfere with her work as well as daily functioning." Tr. 841.

Further, the ALJ erred in failing to support her reason with substantial evidence. The ALJ must do more than state conclusions. *Garrison*, 759 F.3d at 1012. The ALJ may satisfy the

substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Id*. Here, the ALJ did not set out a detailed and thorough summary of facts or conflicting clinical evidence on which she relied in making her finding. Rather, the ALJ simply stated her conclusion that Dr. Samarantunge's opinion is "not supported by the record" without providing substantial evidence and her interpretations thereof. Because the ALJ did not adequately support her conclusion, the ALJ erred in rejecting Dr. Samaratunge's opinion.

**II. Treating PMHNP Pitney**

For claims filed before March 27, 2017, [1] acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. 20 C.F.R.§§ 404.1513(a), 416.913(a) (2013). Nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists are non-acceptable medical sources or "other medical sources." 20 C.F.R. §§ 4041513(d)(1), 416.913(d)(1) (2013). Still, the Social Security Administration (SSA) has recognized that

> [w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.

Soc. Sec. Ruling (SSR) 06-03p, available at 2006 WL 2329939, at *3.

While opinions from non-acceptable medical sources may not be given controlling weight, their opinions may be used in determining the "severity of [the individual's]

---

[1] For claims filed on or after March 27, 2017, the Commissioner has broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice. The Commissioner has also clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. See 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

impairment(s) and how it affects [the individual's] ability to work." *Id.* at *2; 20 C.F.R. § 404.1513(d). The ALJ may reject the competent testimony of other medical sources for reasons "germane to the witness." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Germane reasons may include a finding that the testimony contradicts the witness's own earlier testimony or that of other medical specialists, or that the witness was biased. *Dale v. Colvin*, 823 F.3d 941, 944–45 (9th Cir. 2016).

Further, "(d)epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source." SSR 06-03p, 2006 WL 2329939, at *5. The factors to be applied are: the length of relationship and frequency of contact; the level of consistency with other evidence of record; the degree to which the source presents relevant evidence to support an opinion; quality of opinion explanation; specialty area expertise, if applicable; and any other factors that tend to refute the opinion. *Id.* at *4–5.

Nurse Practitioner Pitney began treating Plaintiff on April 4, 2012. Throughout the course of the treatment period, she noted that Plaintiff's mood was fairly stable but that she continued to have daily auditory hallucinations, delusions, and paranoid ideation. Tr. 421; Tr. 423; Tr. 425; Tr. 430; Tr. 434. In her October 15, 2013 Mental Capacity Assessment, Nurse Practitioner Pitney determined that Plaintiff had a marked limitation in her ability to perform a normal workday and workweek. Tr. 416. She described her medical/clinical findings for this assessment as "(d)aily has auditory hallucinations and paranoid ideation which effects [sic] ability to stay present and to manage more stressful situations." *Id.* Nurse Practitioner Pitney again noted on November 18, 2013 that Plaintiff's "(m)ood is stable, in depression, mild to normal range. Daily auditory hallucinations and paranoia often resulting in anxiety and occasionally irritability." Tr. 412.

The ALJ assigned "little weight" to Nurse Practitioner Pitney's opinion that Plaintiff has a marked limitation in her ability to complete a normal workday and workweek. Tr. 28. The ALJ reasoned that Nurse Practitioner Pitney repeatedly found that Plaintiff had a "stable mood with no more than mild depression." *Id*.

Plaintiff argues that the ALJ erred in rejecting Nurse Practitioner Pitney's opinion that Plaintiff has a marked limitation in her ability to complete a normal workday and workweek without providing a germane reason. First, Plaintiff argues that the stability of Plaintiff's mood is not germane to Nurse Practitioner Pitney's opinion because it fails to address the substance of her opinion. Pl.'s Op. Brief 7. Plaintiff asserts that each of Nurse Practitioner Pitney's chart notes that mention Plaintiff's mood being stable also mention that Plaintiff continued to have daily auditory hallucinations and paranoid ideations. *Id*. at 8. As with the above analysis, Plaintiff asserts that stability "says nothing about severity" and has "no probative value in assessing the veracity of the professional's opinion about [Plaintiff's] functional limitations." *Id*. at 7. Plaintiff contends that "[a] person with an intellectual disability may maintain a stable IQ, no matter how low; a person with kidney failure may remain stable on daily dialysis; and a person's hallucinations may occur every day without variation." *Id*.

Next, Plaintiff argues that the ALJ's rejection of Nurse Practitioner Pitney's opinion because Nurse Practitioner Pitney often noted that Plaintiff had no more than mild depression, is not germane to Nurse Pitney's opinion. *Id*. at 8. Plaintiff contends that Nurse Practitioner Pitney "did not identify Plaintiff's depression as a basis for her opinion." *Id*. Rather, Plaintiff asserts that Nurse Practitioner Pitney identified Plaintiff's psychosis as the cause for Plaintiff's marked limitation. *Id.* Plaintiff asserts that Nurse Practitioner Pitney's observations of Plaintiff's mild depression are not counter to her opinion about Plaintiff's ability to work. *Id*. Further, Plaintiff

OPINION & ORDER – 11

argues that "(t)here is no logical connection between the ALJ's reason and Nurse Practitioner Pitney's stated basis for her opinion." *Id*.

I agree with Plaintiff that the ALJ erred in rejecting Nurse Practitioner Pitney's opinion that Plaintiff has a marked limitation in completing a normal workday and workweek. First, the ALJ's statement that Nurse Practitioner Pitney repeatedly found that Plaintiff's mood was stable is unrelated to Nurse Practitioner Pitney's opinion that Plaintiff has a marked limitation in her ability to perform a normal workday and workweek. Regardless of whether Plaintiff's mood is stable, the record shows that throughout the course of her treatment, Nurse Practitioner Pitney found that Plaintiff continued to experience daily auditory hallucinations and paranoid ideation, which continued to interfere with her ability to work. Tr. 421; Tr. 423; Tr. 425; Tr. 430; Tr. 434. Further, Nurse Practitioner Pitney explained that her findings regarding Plaintiff's work limitations related to symptoms associated with her bipolar disorder with psychosis. *E.g.*, Tr. 416 (describing the medical/clinical findings in support of her October 15, 2013 opinion that Plaintiff had "(d)aily has auditory hallucinations and paranoid ideation which effects [sic] ability to stay present and to manage more stressful situations.").

Second, the ALJ's statement that Nurse Practitioner Pitney repeatedly found that Plaintiff had no more than mild depression is not germane to Nurse Practitioner Pitney's opinion about Plaintiff's ability to work. As in the above analysis, I agree with Plaintiff that Nurse Practitioner Pitney did not base her opinion on symptoms of depression. Rather, she made her determination based on Plaintiff's bipolar disorder with psychosis. Nurse Practitioner Pitney's observations about depression are neither counter to, nor related to, her opinion that Plaintiff cannot perform a normal workday and workweek. As noted above, Nurse Practitioner Pitney consistently found

that Plaintiff continues to experience daily auditory hallucinations and paranoid ideation that interfere with her ability to work.

Lastly, the ALJ failed to consider relevant factors in weighing Nurse Practitioner Pitney's opinion. The ALJ failed to note that Nurse Practitioner Pitney has a fairly long history of treating Plaintiff. The record also shows substantial frequency of contact throughout the course of treatment. Further, the ALJ failed to consider the level of consistency of Nurse Practitioner Pitney's evidence with other evidence of record, the degree to which Nurse Practitioner Pitney presents relevant evidence to support her opinion, the quality of her opinion explanation, her specialty area expertise, and any other factors that tend to refute the opinion. The facts of this case show an extensive relationship between Nurse Practitioner Pitney and Plaintiff such that each of the above factors should have been considered in analyzing the weight of Nurse Practitioner Pitney's opinion.

In sum, I agree with Plaintiff that neither of the ALJ's reasons are germane to Nurse Practitioner Pitney's opinion because they fail to address the substance of the opinion. Proper consideration should be given to Nurse Practitioner Pitney's opinion that Plaintiff's auditory hallucinations and paranoid ideations associated with her bipolar disorder with psychosis prevent her from being able to perform a normal workday and workweek without marked limitation. Because the ALJ failed to properly weigh and provide a reason germane to Nurse Practitioner Pitney's opinion, the ALJ erred in rejecting the opinion.

### III. Remand for Additional Proceedings

Plaintiff seeks a remand with instructions for the ALJ to properly consider the opinions of Dr. Samaratunge and Nurse Practitioner Pitney. I agree with Plaintiff that remand for such additional proceedings is the correct resolution in this case.

CONCLUSION

The Commissioner's decision is reversed and remanded for further proceedings.

IT IS SO ORDERED.

Dated this 28 day of November, 2018

*Marco A. Hernandez*
Marco A. Hernandez
United States District Judge